Good morning, Your Honors. May it please the Court, Natasha Chesler, along with my co-counsel, Timothy McCaffrey, for the appellant, Maxine Dugas. Our firm substituted into this matter after it had been fully briefed. So, somewhat similar to the Court, I got to comb through everything and try and make heads of tails as to what happened in the Court below. And I came away with two main reasons why I believe summary judgment was incorrect and an error of law. The first most important point is that defendant failed to meet its burden under GOOS to prove a legitimate business reason. It is not enough for an employer to simply say, we had a layoff, and therefore, you have no discrimination claim and don't get to see a jury. In Davis v. Team Electric Company, 520F3-1080, this circuit denied summary judgment specifically explaining that it is not enough to say downturn in work is enough. You have to explain why you choose one employee over another. And that is also reiterated in GOOS. As they explained in the GOOS California Supreme Court, invocation of the right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its workforce or engaged in intentional discrimination when deciding which individual workers to retain and release. What's your strongest evidence that, or what do you think, having come through the record, the strongest evidence of pretext is in this case? Well, I think for pretext there are multiple things. First of all is mainly Lockheed had administrative aides and administrative assistants. And administrative aides served higher level managers and administrative assistants served lower level managers. And in January 2013, Lockheed let go of every single administrative aide, all of who happened to be over 50 years old and two in their 60s. The administrative assistants, who are largely in their 20s and 30s, remained, and they remain to this day. And then immediately after Ms. Dugas gets terminated, it's not effective until April. An administrative assistant position opens. Let me ask you a few questions about that. So Lockheed claims that the administrative aide specialist is a quite different job than administrative assistant. Is that true? That's a disputed issue of fact. So what's the evidence in the record to show that they're interchangeable? I mean, they have different names, but what's the evidence in the record to show that they are the same job? Okay. Brandy Bacon, who was significantly younger than the plaintiffs, testified that she provided administrative support for the same supervisors as the plaintiff in the same department, performing much of the same duties. And that is in the excerpt of records at 289 to 90 and 332. Kaylee Metter, who was born in 1990 and obviously much younger than the plaintiff and her two counterparts, was hired in May 2015 as administrative aide or, sorry, administrative assistant. And she testified that she answers phones, schedules meetings, prepares presentations, creates agendas, and does various things her supervisor asks her to do. For lack of a better way of saying it, a secretary is a secretary, an assistant is an assistant. These are all assistants. They may have different titles, but they are all assisting a supervisor. There's also the two job descriptions. Is there anything in the any documentary evidence in the record that basically lays out the duties or description of each position other than the deposition testimony saying, well, yes, I helped out and did some of the same tasks? Yes. At excerpt of records 340 to 344 are the job descriptions for the administrative aide specialist and the administrative assistants. And so Mr. Luffman in his declaration says that why he doesn't even list administrative assistants in his list of people he chose to eliminate. But then later in his declaration says, well, after I laid Ms. Dubis off, I just gave some of her duties to the administrative assistant that was already in my department. So I think the first main point is that Lockheed has not answered at all why assistants and not, sorry, why aides and not assistants. And it was their burden on summary judgment to prove that. The burden is not on plaintiff to prove their case. That was Lockheed's burden that they failed. And the second main question that Lockheed has not answered is when Maxine Dubis applies for the open administrative assistant position in February, she doesn't even get interviewed. And she's worked at Lockheed for many, many years with a large history in administrative assistant work prior to Lockheed. And they don't even call her in. And defendant offers no evidence to explain why she wasn't called in, who got the job, why that person was more qualified than her. With regard to the two administrative assistants that were hired after Ms. Dubis was let go, did she apply for both of those positions or just one of them? I believe she applied for one of them, Your Honor. And the one for which she applied, that was the one that somebody over 40 years old was hired into? I could not find the evidence for that in the record, although that is what it says in the briefs. Lockheed also makes this argument about automation coming into play and therefore eliminating the need for the administrative specialist. What's your response to that? Ms. Dubis testified, and it's also in her declaration, that she was well-versed in computers and her position had always been automated. She had always used a computer. She maintained employee attendance records electronically, compiled overtime electronically, prepared paperwork electronically. And, again, that leads us back to the continued advertising for administrative assistants, because if this position has truly become automated, then Lockheed should not still be hiring people to be answering phones and filing paperwork. I have a citation in the record, the declaration of Ms. Melissa Drusis on ER 1403, who indicated that Ms. Dubis applied for one position with Lockheed at Palmdale after April 2013 for a senior administrative assistant position, which was given to a woman over 40 at the time of the hire. So if there's a different citation than perhaps on rebuttal, you can give it to me that you'd like me to look at. Yes, ma'am. And then the final issue of pretext was that Ms. Dubis was also a composite fabricator before she was switched to the administrative assistant position, and she was put on the recall list to be recalled, and a position did open. Yet Lockheed has no explanation why Ms. Dubis was not recalled for that position either. Those are the main issues for pretext. If there are any other questions, I can move on to the cost issue. Go ahead. For the cost issue, it's a unique situation in that the Ninth Circuit has not addressed the fairly recent California Supreme Court case of Williams v. Chino Valley Independent Fire District, which held that the Christianberg standard equates fees with costs, and such that a plaintiff in a civil rights case, discriminatory case, is not going to get held to pay costs unless a finding of bad faith or malice is found. There was an unpublished or an unreported federal case, Rodriguez v. City of Colton in the Ninth Circuit, that's 631 Fed Appendix 474, 2016, in which the Ninth Circuit sort of intimated that Williams v. Chino would be applied to costs in a federal case if it was a FEHA matter. And I think the reasoning in Williams v. Chino and the reasoning in Christianberg applies equally. It's an important area of the law that we want to make sure plaintiffs are able to prosecute. Most of these plaintiffs are of very limited means. Cost bills could become very significant, and there is no reason to separate the Christianberg standard from the costs for a plaintiff in these cases. Are there any questions? Thank you. Thank you very much. Good morning. Tammy Brown for Defendant Lockheed Martin. This is a relatively straightforward case. I'm not sure that plaintiff actually met the prima facie case, but we'll just move on to the legitimate business reasons. In this, there's specific information about why Ms. Dugas's position was eliminated, and it is not a general downturn in business. Mr. Luffman testified that Palmdale's site does a lot of fabrication. It builds things. He oversaw, at one point, 400 people who were involved in building things. There were specific reasons for the downturn in business at Palmdale, loss of certain contracts on certain airplanes, and that resulted over the years into his workforce shrinking from 400 to approximately 100. Very specific about that, and because of that, he needed to reduce overhead. And he didn't say this in general terms. He said what overhead he was responsible for, his own position, the supervisor's position, and the one admin that reported to him, and that was Ms. Dugas. And that is consistent with what the other evidence that is presented by Lockheed Martin, was that the union and Lockheed had agreed that managers, first level like Mr. Luffman, and supervisors could be supported by the represented 6707 position, the position that Ms. Dugas had. And the reason why is because the position had been kind of, the purpose of it was to be able to support the personnel documentation for the represented workforce. As that workforce shrank, they needed less support in that means. Mr. Luffman didn't say that he needed to get rid of her altogether because she was completely irrelevant. What he said was he needed to reduce his overhead because of the shrinking business, and that is the decision that made sense to him. The fact that there are other positions out there that she applied for and didn't get, even though you're correct it was awarded to a woman over 40, has no bearing here because there's absolutely no evidence that any of those positions reported to Mr. Luffman in that he was responsible for them. Most importantly, though, there's no evidence that any of those positions were bargaining unit positions. As such, both Lockheed and the union felt that they were different positions. Whether plaintiffs agree with that or not, that cannot be disputed that Lockheed considered it a different position. How was it different, though? I have the documents that show the two different descriptions. I don't see how they're really different positions. Well, first of all, the job description that was offered by plaintiffs isn't properly authenticated. If they had actually had the HR people from Lockheed, they could have told you that those were the document that was presented. It talks about the general duties that go into that particular position, and then what happens is they go to wherever they are particularly needed in that skill set. So I don't know what other positions the younger, unrepresented workers did. Or they could have been HR people, so they might have had some experience in payroll. You're not telling me anything that's in the record. You're just speculating now? Right, because I'm just telling you. Don't speculate. But that's the problem with saying that there are these other unrepresented positions out there. I don't know what the positions are. What I do know about them. Well, it's true that they were advertised, right? There were some that were advertised. There's no evidence whether they were filled. There was no evidence as to what role they were supposed to play. Well, we know that one was filled by a woman over 40. Okay. We also know that it didn't report to Mr. Luffman. That's in the record, too. That's correct. All right. Did Mr. Luffman subsequently hire an administrative aide? No. There's no, through today, there are no people populating that 6707 position, that representative bargaining unit position. There are no administrative aides. I realize that's the representative bargaining position, but that wasn't my question. My question was, was there any administrative aide, or is there any administrative aide in Luffman's department, whether represented by a union or not? Not that report to him. If you're talking about as you go up his chain of command, there are admins there. But none report to him. He's not responsible. He doesn't have the budget for them. He does not oversee them. I thought I recall reading in the record that somebody, maybe it was someone who came into one of these two positions occasionally and would provide administrative assistance to him, even though she didn't technically report to him. Am I misrecalling that from the record? No. I believe that what Brandy Bacon, the deposition testimony from her, was that they generally did not cover for each other unless one of the absences would result in a stoppage of production. So it was kind of a necessity type of thing. And I believe that also her testimony was that it didn't happen very often. So he doesn't currently have an administrative assistant or aide, but occasionally would utilize someone, would fill in if he needed them to. The testimony that is in the record was that while Ms. Dugas was there, when she was absent, if there was a compelling need to cover for her, a non-represented admin would help with whatever that needed to be done in order to prevent production from stopping. That's what's in the record. Is it true that he probably uses an admin to order his office supplies? Absolutely. But the main function that he testified to in his declaration as to what she performed, what the 6707 position performed, was to maintain personnel records for the represented workforce. And that is the function that overtime records, attendance records, training records, all of those are essentially automated now and can be accessed by the managers and the supervisors. But, again, the issue here, though, is whether or not plaintiff thinks that Ms. Dugas should have been in an unrepresented position or that she should have been moved someplace else, that doesn't indicate any discriminatory intent because it is undisputed that Lockheed Martin and Ms. Dugas' union considered those positions to be distinct positions and they had agreements about what they were to do and who they were to report to and that type of thing. And nobody has filled those positions since. I think the irony of saying that at the end you have a seniority system and then at the end when you finally don't have anybody in that position, they happen to be older, that's because there's a seniority system. I know that it doesn't necessarily mean that you're going to be over 40 if you're the most senior person in that position, but it's likely that you're going to be older than all of the other people who had held the position before if your seniority in that position allows you to have bumping rights and allows you to stay there. Speaking of bumping rights, on the associational disability discrimination claim, why doesn't the Declaration of Palazzo create a disputed material issue of disputed fact? Well, first of all, we're talking about a violation of FEHA and I don't think that the language of FEHA that talks about being associated with a person of those characteristics would apply here. So let's assume that Mr. Palazzo's declaration is testimony. Let's assume that there is such a claim. Why isn't Palazzo's declaration evidence create a genuine issue of material fact? Because basically what he's saying is that there's a conspiracy to get rid of the other two people because of their disabilities. He's not saying that they were associated with them because of their disabilities. They were associated with them because of their member in the union, and not only that, the only evidence that there is that the decision-maker, Mr. Luffman, knew of Ms. Dugas was that he knew of her but didn't know that Ms. Cooper-Wyand, that he knew of her, but he didn't know that she knew Ms. Dugas. There's no evidence that he had an understanding of anybody's seniority. There's no evidence that he understood even that Ms. Dugas, once her position was eliminated, would actually lose her job because the way that the bumping rights work that then you go and you bump to someplace else. And it is undisputed that Mr. Luffman didn't know of Ms. Karras' existence until this lawsuit and he was asked about her. So I don't know how there could be an associational discrimination claim when the person who's making the decision doesn't associate the other two people with the plaintiff and, moreover, the only association that they seem to have is that they're union members. Does that answer your question? Well, yes, it answered it. If you felt that there was more. Because it really is an attempt to allege a conspiracy when you can't allege a conspiracy. A corporation can't conspire with its employees. It's just not possible. So they're trying to get around it this way. I suppose they could, in Ms. Cooper-Wyand's case, bring this evidence in, but the fact that he believes that Lockheed, in general, wanted to get rid of Ms. Cooper-Wyand and Ms. Karras because of their disabilities, there's no evidence that Mr. Luffman was aware that they had disabilities, that he associated them with that. And I don't think that that's the type of wrong that the FEHA is trying to address. I think the allegation is not that they wanted to get rid of them because of their disabilities, but they wanted to lay them off because they were taking so much time off already and not performing their jobs. That is part of it. I think that what he says as the conclusion is he believes that they, because of their disabilities and definitely because of their time off. And, in fact, Ms. Dugas doesn't even believe that anything having to do with Ms. Cooper-Wyand's or Ms. Karras's medical conditions or disabilities are the reason that she was selected for layoff. She's not quite sure, but she says her only association with them is that they're all union members. Would you address the award of costs? Yes. In Champion Produce, which we cited in our brief, the Ninth Circuit has made it clear that in diversity cases, when you're talking about costs, that is procedural. It's not substantive law. So there's no reason in this particular case to believe that that will change under FEHA.  But it has been the law for quite a while that diversity cases allow that costs are to be determined under federal statutes. And federal statutes here say that the presumption of cost goes to the prevailing party. Appellant's counsel cited a case that I won't be able to distinguish because it's not in their brief. All right. Thank you. If the Court has nothing else? No. Thank you. Do you have any rebuttal? Yes. Thank you. Turning first to follow up on your question about Mr. Luffman, Kaylee Metter, she was the one that was born October 19, 1990, and was hired in May 2015, testified that she does provide support for Mr. Luffman, including scheduling conference rooms and preparing his expense reports. And her deposition testimony is at the excerpts of Record 292. And I also looked at the declaration regarding the woman that was picked for the position that Ms. Dugas was not even interviewed for, and it just says that she was over 40, but we don't know how old at all she is. There's no explanation of what the basis of that information is. It's not based on personal knowledge. And what's the age for age discrimination? Is that 50? It is over 40. Is it over 40? A five-year age difference is enough to support an inference of discrimination under California law. That's Sandal v. Taylor-Lustig. That was cited in the brief, 188 Calat 4th, 297, such that you could be getting rid of, say, women over 50 who appear older and more infirm than women who are 40 or 41. And in this case they got rid of Ms. Dugas, who was in her mid-50s, and then the other two women in their 60s. So there is at least a 13-year age gap conceivably between this someone near 40 and Ms. Dugas. But the bigger question is, what were these women's qualifications? Why was Ms. Dugas not even interviewed? After being at the company for all these years, why would they not at least bring her in and talk to her and explore her? And I think it goes back to the other issue that was raised, which is this really all started with them trying to get rid of D. Cooper Wayand and Judy Careys, the older women who had the bumping rights, but they couldn't get rid of them without getting rid of Judy or Maxine, and so they got rid of all three. So the response to that is that Mr. Luffman was the one who was supposed to minimize overhead in his department, but he wasn't aware that there was no evidence introduced that he was aware of this union bumping rights situation or even of the two other women. Until supposedly the time he made the decision, is what he said. He didn't know until the time he made the decision. But it goes back to the whole can of worms of if he's looking at his department, I have not seen any evidence in the record why plaintiff over Brandy Bacon or Amber Sattolino or all the other administrative assistants in his department, counsel was up here speculating, and we can all speculate, but the burden on summary judgment is not to provide speculation. It was the employer's responsibility. How do you address the fact that that position in his department remains unfilled to this day? Well, the title remains unfilled, but there are administrative assistants who are performing the same duties. So we can call it something else, but it's not really something else.  And you hire white secretary aides, or have you not? Is there not an inference that it's possibly racial discrimination, even though I've changed the job title? All that really changed was the job title. And why not at least interview Ms. Dugas for this position? Are there any other questions on the? And then on the cost provision, the ADA does provide that under federal law that costs are not awarded unless the Christian Berg standard is met, and that was Save Our Valley versus Sound Transit, 335F932. And so I don't see any reason to treat a state discriminatory claim different than a federal discriminatory claim when it comes to costs. But your claim was under FEHA? That's correct. Okay, both claims were under FEHA. Yes, Your Honor. Does FEHA have any cost provision? Yes. And what does it say? That applies, well, it says it awards costs, but the California Supreme Court has interpreted that to require application of the Christian Berg standard, which is that costs are only awarded if it's shown to be frivolous or in bad faith. And do you have any cases on point with respect to costs under FEHA being applied in federal court? The only one I saw was the unpublished Rodriguez case, which was a Ninth Circuit case that didn't address it head on, but did intimate that the California Supreme Court holding would apply. And do you have the cite to that case? Yes. It is 631 Federal Appendix 474, Ninth Circuit, 2016. All right. Thank you very much, Counsel. Thank you. Okay, Dugas v. Lockheed Martin will be submitted, and we'll take a Mann v. County of San Diego.
judges: Wardlaw, Nguyen, Owens